[No. 48181-9-I.   Division One.   May 13, 2002.]

ARCHITECHTONICS CONSTRUCTION MANAGEMENT, INC., *Plaintiff*, v. PARVIZ KHORRAM, ET AL., *Appellants*, KENSINGTON HOMES, INC., *Respondent.*

*James S. Fitzgerald* and *Kevin B. Hansen* (of *Livengood, Carter, Tjossem, Fitzgerald, & Alskop, L.L.P.*), for appellants.

*John P. Hayes* and *Devon P. Groves* (of *Forsberg & Umlauf, P.S.*), for respondent.

ELLINGTON, J. — We must decide whether the discovery rule applies in contract cases. We hold it does, and that the statute of limitation for an action for breach of contract begins to run when a party knows or, in the exercise of due diligence should know, of the breach. Here, Parviz and Ladan Khorram filed suit within two years of the first signs of a breach. The statute of limitation does not bar their claim, and we reverse summary judgment.

## FACTS

Parviz and Ladan Khorram contracted with Kensington Homes, Inc., (Kensington) to construct their home. Kensington built the home according to the design and plans of architect Mohammad Pezeshk, owner of Architechtonics Construction Management, Inc. (ACM). Kensington substantially completed the work in June of 1993.

In late 1998, the Khorrams noticed paint bubbling and peeling on the side of their house and garage, and found a

piece of molding that had rotted and fallen from the eaves.[1] In May 1999, the Khorrams' homeowners' association sent a letter advising them that the association's covenants and rules required them to repair the damage.

The Khorrams contracted with ACM to make the repairs. ACM discovered dry rot in the walls of the house. In April of 2000, investigators for Safeco Insurance concluded that the dry rot "had been on-going for an extended period of time, most likely since the residence was constructed in 1992."[2]

In June of 2000, ACM recorded a lien against the Khorrams' home and filed an action for foreclosure. The Khorrams brought a third-party action against Kensington, alleging that Kensington breached the construction contract and "failed to satisfy warranties and guarantees made to the Khorrams whether express or implied."[3] Kensington moved for summary judgment, arguing that the Khorrams' claims were barred by the statute of limitation and by the construction statute of repose. The trial court granted Kensington's motion, and the Khorrams appeal.

## DISCUSSION

*Statute of Limitation and the Construction Statute of Repose*

■ The liability of contractors and design professionals for faulty construction is limited by a three-year statute of limitation for actions based in tort or oral contract,[4] and a six-year limitation for actions based on a written contract.[5]

---

[1] For purposes of summary judgment, Kensington conceded these facts.

[2] Clerk's Papers at 55.

[3] Clerk's Papers at 9.

[4] RCW 4.16.080(2), (3).

[5] RCW 4.16.040 provides: "The following actions shall be commenced within six years: (1) An action upon a contract in writing, or liability express or implied arising out of a written agreement."

The statute of limitation for most tort claims begins to run when the plaintiff suffers injury; however, the claim may in some circumstances be subject to a "discovery" rule.[6] Under the discovery rule, the cause of action accrues and the statute of limitation begins to run when the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the facts that give rise to the claim.[7]

■ The construction statute of repose further limits liability by barring claims that do not accrue within six years of substantial completion of construction:

All claims or causes of action as set forth in RCW 4.16.300[8] shall accrue, and the applicable statute of limitation shall begin to run only during the period within six years after substantial completion of construction, or during the period within six years after the termination of the services enumerated in RCW 4.16.300, whichever is later. . . . Any cause of action which has not accrued within six years after such substantial completion of construction, or within six years after such termination of services, whichever is later, shall be barred . . . .[9]

The statute of repose has the same purpose as an ordinary statute of limitation—it is intended to "prevent stale claims and place a reasonable limitation on the personal liability exposure of construction industry defendants."[10]

---

[6] *Gunnier v. Yakima Heart Ctr., Inc.*, 134 Wn.2d 854, 859, 953 P.2d 1162 (1998); 16 DAVID K. DEWOLF & KELLER W. ALLEN, WASHINGTON PRACTICE: TORT LAW AND PRACTICE § 9.2, at 204 (2d ed. 2000).

[7] *Allen v. State*, 118 Wn.2d 753, 757-58, 826 P.2d 200 (1992); 16 DEWOLF, *supra* n.6.

[8] RCW 4.16.300 refers to the following causes of action:

[A]ll claims or causes of action of any kind against any person, arising from such person having constructed, altered or repaired any improvement upon real property, or having performed or furnished any design, planning, surveying, architectural or construction or engineering services, or supervision or observation of construction, or administration of construction contracts for any construction, alteration or repair of any improvement upon real property. This section is intended to benefit only those persons referenced herein and shall not apply to claims or causes of action against manufacturers.

[9] RCW 4.16.310.

[10] *Bellevue Sch. Dist. No. 405 v. Brazier Constr. Co.*, 103 Wn.2d 111, 120, 691 P.2d 178 (1984).

By requiring that the cause of actions accrue and the statute of limitation begin to run within the six-year window following substantial completion, the repose statute "restricts the judicially created discovery rule with a 6-year overall bar."[11] Therefore, "[t]he discovery rule, if applicable, for accrual of actions is limited to the 6-year period."[12]

The statute of limitation and the statute of repose together thus create a two-step analysis for computing the limitation period for a tort action arising from improvements on real property. First, the cause of action must accrue within six years of substantial completion of construction. Second, suit must be filed within the applicable statute of limitation.[13]

*Applicability of the Discovery Rule in Contract Actions*

The Khorrams argue that the discovery rule applies in contract actions, and that the six-year statute of limitation on their contract claim did not begin to run until they discovered Kensington's alleged faulty construction in 1998. Kensington contends the discovery rule applies only in tort cases, and that in contract cases, the statute of limitation begins to run when the breach occurs—here, when construction was completed in June of 1993. Under the Khorrams' interpretation, the limitation period does not expire until 2004; according to Kensington, the limitation period expired in 1999. The Khorrams filed their claim in July of 2000.

---

[11] *Brazier*, 103 Wn.2d at 119.

[12] *Brazier*, 103 Wn.2d at 119; *see also 1519-1525 Lakeview Blvd. Condo. Ass'n v. Apartment Sales Corp.*, 144 Wn.2d 570, 578, 29 P.3d 1249 (2001); *Pfeifer v. City of Bellingham*, 112 Wn.2d 562, 573, 772 P.2d 1018 (1989) (Durham, J., dissenting); *Gevaart v. Metco Constr. Co.*, 111 Wn.2d 499, 502, 760 P.2d 348 (1988); *New Meadows Holding Co. v. Wash. Water Power Co.*, 102 Wn.2d 495, 499-500, 687 P.2d 212 (1984); *Gazija v. Nicholas Jerns Co.*, 86 Wn.2d 215, 222 n.2, 543 P.2d 338 (1975); *Hudesman v. Meriwether Leachman Assocs.*, 35 Wn. App. 318, 321-22, 666 P.2d 937 (1983); *Rodriguez v. Niemeyer*, 23 Wn. App. 398, 400-01, 595 P.2d 952 (1979).

[13] *Del Guzzi Constr. Co. v. Global N.W., Ltd.*, 105 Wn.2d 878, 883, 719 P.2d 120 (1986); 16 DeWolf, *supra* n.6, § 9.12, at 211.

While our Supreme Court has stated that the statute of limitation in contract actions begins to run at the time of breach,[14] the court has never considered when the statute begins to run where reasonable diligence would not reveal the breach. The court therefore has not addressed the issue before us.

The court first adopted the discovery rule in *Ruth v. Dight*,[15] a medical malpractice case in which a doctor inadvertently left a sponge in the plaintiff's abdomen. The plaintiff did not discover the cause of her recurring pain until she underwent exploratory surgery 23 years later. The court acknowledged the practical considerations underlying statutes of limitation: "[C]ompelling one to answer stale claims in the courts is in itself a substantial wrong. After all, when an adult person has a justiciable grievance, he usually knows it and the law affords him ample opportunity to assert it in the courts."[16] But the court noted that "accrual" of a cause of action is a term susceptible of several meanings, and "could as readily be said to commence with the reasonable discovery of the injury as with the occurrence of the event or omission which produced the alleged injury."[17] The court held that in a malpractice action where a party "would not in the usual course of events know he had been injured until long after the statute of limitations had cut off his legal remedies," a balancing of harms required that accrual not occur until the patient discovers or, in the exercise of reasonable diligence should have discovered, the foreign article in his body.[18]

---

[14] *See Taylor v. Puget Sound Power & Light Co.*, 64 Wn.2d 534, 537-38, 392 P.2d 802 (1964); *see also* 25 David K. DeWolf & Keller W. Allen, Washington Practice: Contract Law and Practice § 16.22, at 314-15 (1998) (statute of limitation for written contract begins to run at date of breach).

[15] 75 Wn.2d 660, 453 P.2d 631 (1969).

[16] *Ruth*, 75 Wn.2d at 665.

[17] *Ruth*, 75 Wn.2d at 666.

[18] *Ruth*, 75 Wn.2d at 665, 667-68.

Over the past 30 years, our Supreme Court has extended the discovery rule to other kinds of tort cases. In *Ohler v. Tacoma General Hospital*,[19] the court applied the discovery rule in a products liability action. In *White v. Johns-Manville Corp.*,[20] the court applied the rule where a product made of asbestos injured the plaintiff, holding the latent nature of occupational diseases such as asbestosis justified the use of the discovery rule.[21] In *Del Guzzi Construction Co. v. Global Northwest, Ltd.*,[22] the court held that the statute of limitation was not triggered until the plaintiff knew of the defendant's alleged failure to design accurate engineering plans for construction of a sewer plant.[23]

In *U.S. Oil & Refining Co. v. Department of Ecology*,[24] the court applied the discovery rule in an action involving penalties for illegal discharge of pollutants. The Department of Ecology alleged U.S. Oil submitted inaccurate reports and exceeded its effluent limits. U.S. Oil contested some of the penalties as barred by the statute of limitations. Rejecting U.S. Oil's arguments, the court reasoned that the self-reporting regulatory system "mandates application of a discovery rule," because the Department of Ecology must rely on industry reporting to discover violations: "Without a discovery rule, industries can discharge pollutants, and by failing to report the violation, can escape penalties."[25] The *U.S. Oil* court crystallized the analysis of the discovery rule:

---

[19] 92 Wn.2d 507, 598 P.2d 1358 (1979).

[20] 103 Wn.2d 344, 693 P.2d 687 (1985).

[21] *Johns-Manville*, 103 Wn.2d at 354.

[22] 105 Wn.2d 878, 884, 719 P.2d 120 (1986).

[23] *Del Guzzi*, 105 Wn.2d at 883-85. *See also Gevaart*, 111 Wn.2d 499 (statute of limitation was not triggered until plaintiff knew or should have known that a downward-sloping stairwell step was a construction defect).

[24] 96 Wn.2d 85, 633 P.2d 1329 (1981).

[25] *U.S. Oil*, 96 Wn.2d at 92.

In determining whether to apply the discovery rule, the possibility of stale claims must be balanced against the unfairness of precluding justified causes of action. That balancing test has dictated the application of the rule where the plaintiff lacks the means or ability to ascertain that a wrong has been committed. Thus, the rule has been applied, for example, to cases involving professional services and products liability. Likewise, courts have held that a defendant's unlawful failure to report an automobile accident will suspend a statute of limitation while, as a result of such failure, there is inability to prosecute the cause of action.

In each of these instances, had the discovery rule not been applied, the plaintiff would have been denied a meaningful opportunity to bring a warranted cause of action. In each, the premise underlying all limitation statutes was not applicable. Statutes of limitation operate upon the premise that "when an adult person has a justiciable grievance, he usually knows it and the law affords him ample opportunity to assert it in the courts."[26]

Over the years, Washington courts have applied the discovery rule to legal malpractice claims,[27] conversion actions,[28] libel suits,[29] breach of fiduciary duty claims,[30] and wrongful adoption actions.[31] The Legislature has directly incorporated discovery rules into several statutes of limitation, including those for fraud,[32] personal injury arising from acts of childhood sexual abuse,[33] medical

---

[26] *U.S. Oil*, 96 Wn.2d at 93 (citations omitted) (quoting *Ruth*, 75 Wn.2d at 665).

[27] *See Matson v. Weidenkopf*, 101 Wn. App. 472, 3 P.3d 805 (2000).

[28] *See Crisman v. Crisman*, 85 Wn. App. 15, 931 P.2d 163 (1997).

[29] *See Kittinger v. Boeing Co.*, 21 Wn. App. 484, 585 P.2d 812 (1978).

[30] *See Germain v. Pullman Baptist Church*, 96 Wn. App. 826, 980 P.2d 809 (1999), *review denied*, 139 Wn.2d 1026 (2000).

[31] *See Price v. State*, 96 Wn. App. 604, 980 P.2d 302 (1999), *review denied*, 139 Wn.2d 1018 (2000).

[32] RCW 4.16.080(4).

[33] RCW 4.16.340.

malpractice,[34] misappropriation of trade secrets,[35] and Uniform Commercial Code claims for breach of warranty of future performance.[36]

■ Washington courts have expanded the discovery rule beyond tort cases. In *Vigil v. Spokane County*,[37] and *Stuart v. Coldwell Banker Commercial Group, Inc.*,[38] the rule was applied in actions for breach of the implied warranty of habitability.[39] The implied warranty of habitability is an implied-at-law term in a contract for the sale of a home.[40] We can discern no reason to apply the discovery rule to claims based on breach of an implied contract term, but not to claims based on breach of an express contract term.

Kensington relies upon *Taylor v. Puget Sound Power & Light Co.*[41] and *North Coast Enterprises, Inc. v. Factoria Partnership*[42] for the proposition that in contract actions, the statute of limitation runs from the time of breach. But *Taylor* was decided five years before the Supreme Court first adopted the discovery rule in *Ruth*, and it relies on *Lindquist v. Mullen*,[43] which was explicitly overruled by *Ruth*.[44] In addition, *Taylor* involved not an unknown

---

[34] RCW 4.16.350. This statutory discovery rule replaced the common law rule announced in *Ruth v. Dight*.

[35] RCW 19.108.060.

[36] RCW 62A.2-725(2).

[37] 42 Wn. App. 796, 714 P.2d 692 (1986).

[38] 109 Wn.2d 406, 745 P.2d 1284 (1987).

[39] *Vigil*, 42 Wn. App. at 800; *Stuart*, 109 Wn.2d at 417. We note that despite Kensington's repeated contention that "the Khorrams' sole cause of action against Kensington is for breach of contract," Br. of Resp'ts at 1, in fact the Khorrams' complaint also alleged breach of warranty. The Khorrams do not, however, argue that any different analysis is appropriate for the warranty claim.

[40] *Brickler v. Myers Constr., Inc.*, 92 Wn. App. 269, 274, 966 P.2d 335 (1998).

[41] 64 Wn.2d 534, 392 P.2d 802 (1964).

[42] 94 Wn. App. 855, 974 P.2d 1257 (1999).

[43] 45 Wn.2d 675, 277 P.2d 724 (1954).

[44] *Ruth*, 75 Wn.2d at 667.

breach, but an unclear amount of damages. *Taylor* held only that "[r]unning of the statute of limitations against the breach of contract (the failure to secure an easement) is not postponed by the fact that the actual or substantial damages did not occur until a later date."[45] In *North Coast*, we held only that the discovery rule did not apply on the facts presented—not that the rule could never apply to contract actions. There, faulty windows began to leak shortly after substantial completion of an office building. We held the "alleged injury was not inherently undetectable," and "[t]he equities of this case do not compel us to apply the discovery rule here."[46] Our rationale suggests that upon proper facts, the rule would apply. Such facts do exist here.

Increasingly, other jurisdictions are applying the discovery rule in breach of contract cases. Courts reason that plaintiffs should not be barred from bringing suit where they cannot, with reasonable diligence, detect the defendant's breach.[47] The Arizona Supreme Court expressed this rationale as follows:

---

[45] *Taylor*, 64 Wn.2d at 538.

[46] *N. Coast*, 94 Wn. App. at 860, 856.

[47] *See, e.g., Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 182 Ariz. 586, 898 P.2d 964 (1995); *Angeles Chem. Co. v. Spencer & Jones*, 44 Cal. App. 4th 112, 51 Cal. Rptr. 2d 594 (1996); *State Farm Mut. Auto Ins. Co. v. Springle*, 870 P.2d 578 (Colo. Ct. App. 1993) (discovery rule applied to contract by statute); *Ehrenhaft v. Malcolm Price, Inc.*, 483 A.2d 1192 (D.C. 1984); *Agustin v. Dan Ostrow Constr. Co.*, 64 Haw. 80, 636 P.2d 1348 (1981); *Clark v. Robert W. Baird Co.*, 152 F. Supp. 2d 1040 (N.D. Ill. 2001); *Habig v. Bruning*, 613 N.E.2d 61 (Ind. Ct. App. 1993); *Brown v. Ellison*, 304 N.W.2d 197 (Iowa 1981); *Vigilant Ins. Co. v. Luppino*, 352 Md. 481, 723 A.2d 14 (1999); *Mowbray v. Waste Mgmt. Holdings, Inc.*, 90 F. Supp. 2d 135 (D. Mass. 2000); *O'Reilly v. Dock*, 929 S.W.2d 297 (Mo. Ct. App. 1996) (discovery rule applied to contract by statute); *Bemis v. Estate of Bemis*, 114 Nev. 1021, 967 P.2d 437 (1998); *Black Bear Lodge v. Trillium Corp.*, 136 N.H. 635, 620 A.2d 428 (1993); *Sodora v. Sodora*, 338 N.J. Super. 308, 768 A.2d 840 (2000); *Munie v. Tangle Oaks Corp.*, 109 N.C. App. 336, 427 S.E.2d 149 (1993); *Wells v. First Am. Bank W.*, 1999 ND 170, 598 N.W.2d 834; *Romeo & Sons v. P.C. Yezbak & Son*, 539 Pa. 390, 652 A.2d 830 (1995); *Biro v. Hartman Funeral Home*, 107 Ohio App. 3d 508, 669 N.E.2d 65 (1995); *Maher v. Tietex Corp.*, 331 S.C. 371, 500 S.E.2d 204 (Ct. App. 1998); *Tex. Indus., Inc. v. City of Dallas*, 1 S.W.3d 792 (Tex. App. 1999); *but see Peterson v. Equitable Life Assurance Soc'y*, 57 F. Supp. 2d 692, 708 (W.D. Wis. 1999) ("Although many [jurisdictions] recognize a 'discovery' rule for breaches of contract just as they do for torts, Wisconsin is not one of

In fact, we find little to distinguish tort and contract such that the discovery rule should properly apply to one but not to the other. The difference "between tort and contract liability has become an increasingly difficult distinction to make." But insofar as tort and contract are distinguishable, Prudential's arguments do not persuade us. We have said that the statute of limitations serves to protect defendants and courts from stale claims where plaintiffs have slept on their rights. However whether a tort victim or contract claimant, a blamelessly uninformed plaintiff cannot be said to have slept on his rights.

Furthermore, the problems associated with stale litigation (e.g., failing memory, unavailable witnesses) are no more acute in contract claims than they are in tort. And in either case, the requirement that parties exercise reasonable diligence safeguards against cases where a plaintiff has truly allowed his claim to become stale. We also reject the suggestion that application of the discovery rule to contract cases would eviscerate the statute of limitations in commercial disputes. The discovery rule has applied uniformly in tort cases for some time, and we do not believe that the statute of limitations has ceased to serve its purpose in tort cases.[48]

Jurisdictions that refuse to apply the discovery rule to contract actions do so chiefly for two reasons: first, a perceived absence of liability insurance for contract defendants, which is deemed to increase the need to protect against stale or fraudulent claims;[49] and second, a general perception that contract claimants have more control over their risk of loss than do tort claimants.[50]

---

them."). *See generally* Sonja Larsen, Annotation, *Modern Status of the Application of "Discovery Rule" to Postpone Running of Limitations Against Actions Relating to Breach of Building and Construction Contracts*, 33 A.L.R. 5TH 1 (1995).

[48] *Gust*, 898 P.2d at 968-69 (citations omitted) (quoting *Barmat v. John & Jane Doe Partners A-D*, 155 Ariz. 519, 747 P.2d 1218, 1222 (1987)).

[49] *See, e.g.*, *CLL Assocs. Ltd. P'ship v. Arrowhead Pac. Corp.*, 174 Wis. 2d 604, 497 N.W.2d 115, 118 (1993).

[50] *See, e.g.*, *CLL Assocs.*, 497 N.W.2d at 118.

Jurisdictions that apply the discovery rule, however, respond that if either party must bear a loss alone, it is more equitable to impose the loss on the party that had the opportunity to prevent it by committing no breach.[51] Additionally, liability insurance was a problem for tort defendants when the discovery rule was first applied to medical malpractice and products liability cases,[52] but state legislatures solved this problem, in part, by enacting statutes of repose.[53] Washington's six-year construction statute of repose mitigates insurance costs by ensuring that contractors and design professionals do not face unlimited or indefinite liability.[54] The impact of such costs is further eased by the fact that Washington homeowners have no cause of action for negligent construction.[55] We also note that most comprehensive general liability policies carried by construction contractors are broad, negotiable, and may cover a great deal of defective construction work.[56]

---

[51] *CLL Assocs.*, 497 N.W.2d at 122 (Abrahamson, J., dissenting).

[52] Michael John Byrne, *Let Truth Be Their Devise*: Hargett v. Holland *and the Professional Malpractice Statute of Repose*, 73 N.C. L. REV. 2209, 2220 (1995); Terrence O. Reed, Note, *Has the Pendulum Swung Too Far? The Status of the Discovery Rule in Medical Malpractice Cases in Tennessee*, 30 U. MEM. L. REV. 625, 632-33 (2000).

[53] Byrne, *supra* n.47, at 2221; Reed, *supra* n.47, at 633; *see also* Wayne J. Martorelli, *State Statutes of Repose and Government Claims for Latent Defects in Design and Construction*, 25 PUB. CONT. L.J. 199, 202 (1996).

[54] Washington's six-year statute of repose is one of the shortest in the country. *See* Andrew Alpern, *Statutes of Repose and the Construction Industry: A Proposal for New York*, 12 CARDOZO L. REV. 1975, 1976 (1991).

[55] *Stuart*, 109 Wn.2d at 417.

[56] *See* Scott C. Turner, *Insurance Coverage for Incorporation of Defective Construction Work or Products*, CONSTRUCTION LAW. 29, 29 (April 1998); James D. O'Conner, *What Every Construction Lawyer Should Know About CGL Coverage for Defective Construction*, CONSTRUCTION LAW. 15, 15, 18 n.32 (Winter 2001); *see also* Jotham D. Pierce, Jr., *Allocating Risk Through Insurance and Surety Bonds, in* HANDLING CONSTRUCTION RISKS: ALLOCATE NOW OR LITIGATE LATER 193, 196 (Practising Law Institute 1998) (completed operations coverage available to protect contractors from claims once project is completed); *Goodwin v. Wright*, 100 Wn. App. 631, 635, 6 P.3d 1 (2000) (discussing how completed operations policies cover damages arising from defective products or work). In *Diamaco, Inc. v. Aetna Casualty & Surety Co.*, 97 Wn. App. 335, 983 P.2d 707 (1999), for example, we held that

We conclude that the reasons for applying the rule in tort claims apply equally in contract actions. When one of the parties is in a poor position to know of the other party's breach, the discovery rule is the only means of ensuring the wronged party is not denied a warranted cause of action. We hold the discovery rule applies. The statute of limitation for contract actions begins to run when a party knows or, in the exercise of due diligence should know, of the other party's breach.

For purposes of the summary judgment motion, it was undisputed that the Khorrams discovered Kensington's alleged breach in late 1998. Their cause of action therefore accrued within the statute of repose. As the Khorrams filed their suit against Kensington in July of 2000, the statute of limitation does not bar their claim.[57]

Reversed and remanded for further proceedings.

BAKER and AGID, JJ., concur.

Review denied at 148 Wn.2d 1005 (2003).

---

damage to a purchaser's property resulting from faulty work by the contractor was a covered loss under the contractor's standard CGL policy. *Diamaco*, 97 Wn. App. at 341. The claim was barred by an exclusion for claims of damage where the insured has agreed to provide other insurance. *Diamaco*, 97 Wn. App. at 342-44.

[57] Kensington also argues the construction statute of repose bars the Khorrams' claim because their action "was not filed within six years" of substantial completion of their house. Br. of Resp'ts at 1. But the statute does not require a lawsuit to be *filed* within six years. Rather, it requires that a claim *accrue* within six years.